IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GENARO M., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:19-CV-2609-M-BK |
| § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff seeks judicial review of the Commissioner's final decision denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636 and *Special Order 3*, before the Court are Plaintiff's motion for summary judgment, as construed from his *Opening Brief Appealing the Denial of his Disability Claim*[1], Doc. 12, and Defendant's *Motion for Summary Judgment*, Doc. 15. For the reasons that follow, Plaintiff's motion should be **DENIED**, Defendant's motion should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

I.  BACKGROUND

    A. Facts

Plaintiff alleges that he became disabled on December 16, 2016, at which time he was 50 years old. Doc. 10-1 at 22, 147. He completed the tenth grade and has past relevant work as a

---

[1] Plaintiff's brief did not comport with the instructions in the Court's *Scheduling Order* to file a summary judgment motion or to cite to the administrative record as directed. *See* Doc. 11. Future failure to comply with the Court's orders may lead to non-compliant pleadings being struck from the record.

cook and drywall installer. Doc. 10-1 at 35. In terms of Plaintiff's relevant medical history, he obtained much of his medical treatment on a single day spent in a hospital emergency department for pain in his low back, left shoulder, and left knee, following a car accident in December 2016. *See, e.g.*, Doc. 10-1 at 511-27. Thereafter, Plaintiff chiefly sought chiropractic care for various sprains, muscle spasms/tightness, and stiffness. *See, e.g.*, Doc. 10-1 at 502-05. One chiropractor, Dr. Danika Manom, DC, concluded that Plaintiff could return to regular duty work on January 13, 2017. Doc. 10-1 at 471.

In June 2017, Dr. Mahmood Panjwana, M.D. conducted a consultative examination on Plaintiff. Doc. 10-1 at 257. At the time of the examination, Plaintiff was five feet six inches tall, weighed 211 pounds, and walked with a cane. Doc. 10-1 at 259. Plaintiff's motor strength in all muscle groups was normal, as were his fine finger movements. Doc. 10-1 at 260. An MRI revealed mild degenerative spondylosis in Plaintiff's lumbar spine, mild to moderate degenerative facet joint hypertrophy in his lumber spine, and minimal degenerative joint disease in the right knee. Doc. 10-1 at 262-63. Dr. Panjwana reported that Plaintiff's range of motion was largely normal, albeit somewhat reduced in his left shoulder, right hip, and left knee and ankle. Doc. 10-1 at 264.

In September 2017, Dr. Eric R. Naifeh, DC, conducted a functional capacity evaluation ("FCE") in relation to Plaintiff's work-related injury. Doc. 10-1 at 282-85. Dr. Naifeh concluded that Plaintiff could not work at "heavy physical demand level (75 pounds) full-time" due to a February 2016 fall into a porta-potty, during which he sprained his right knee and ankle. Doc. 10-1 at 282. Testing demonstrated that Plaintiff could occasionally lift and carry between 20-25 pounds, frequently lift ten pounds, sit "constantly," and stand frequently. Doc. 10-1 at 297, 300. During the FCE, Plaintiff was able to lift 46 pounds overhead. Doc. 10-1 at 296. Dr.

Naifeh concluded that Plaintiff could not return to his position as a drywaller because it demanded heavy work, but he could perform light work, lifting 20 pounds below the waist and 25 pounds above the waist. Doc. 10-1 at 302. The doctor recommended an 80-hour work-hardening program with the goal that Plaintiff could eventually return to his drywaller job. Doc. 10-1 at 303-04.

The following month, Dr. Naifeh completed a questionnaire indicating that Plaintiff could stand/walk at least six hours in an eight-hour workday with normal breaks and would need to take two unscheduled breaks of five to ten minutes each day. Doc. 10-1 at 272-73. He noted Plaintiff could not repetitively reach, grasp, turn or twist objects, or perform fine manipulation with his fingers, and he would likely be absent from work about once a month. Doc. 10-1 at 273-74.

At the November 2018 administrative hearing, Plaintiff testified that he could walk a mile before starting to have knee pain and, using a cane, could probably walk more than a mile. Doc. 10-1 at 38-39. He also averred that he could lift and carry 25 pounds, but not repeatedly. Doc. 10-1 at 39-40. Plaintiff acknowledged that he had not received medical treatment for the prior ten months and only occasionally took an over-the-counter pain reliever. Doc. 10-1 at 40, 44.

### B. The ALJ's Findings

In February 2019, the ALJ issued her findings, determining that Plaintiff had the severe impairments of "right knee near complete full thickness posterior cruciate ligament tear with osteochondritis, chrondromalacia and tendonitis; Right ankle grade I tenosynovitis with mild Achilles tendonitis, lumbar degenerative disc disease (DDD) with multilevel spondylosis; left shoulder degenerative joint disease; and obesity." Doc. 10-1 at 17. The ALJ found that Plaintiff's impairments did not meet or equal one of the listed impairments in the applicable

regulations, and he had the residual functional capacity ("RFC") to lift/carry 25 pounds occasionally and ten pounds frequently and stand/walk/sit for six hours in an eight-hour workday but had several postural limitations. Doc. 10-1 at 17-18. After hearing testimony from a vocational expert, the ALJ concluded that Plaintiff could perform his past relevant work as a cook, which is classified as light work. Doc. 10-1 at 22. Alternatively, the ALJ found that Plaintiff could perform other work available in the national economy—such as a mailroom clerk, ticket seller, or bakery worker, which all constituted light work—and, therefore, he was not disabled. Doc. 10-1 at 23-24.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn*., 465 F.3d 156, 164 (5th Cir. 2006).

**III. ANALYSIS**

Plaintiff raises a sole issue on appeal, namely that the ALJ gave great weight only to Dr. Naifeh's opinion, but her RFC determination did not contain Dr. Naifeh's limitations that Plaintiff would need to take two unscheduled breaks a day, could not perform several movements with his right hand and finger, and was limited to ten percent reaching with the right arm. Doc. 12 at 3. Plaintiff contends that because the ALJ accepted Dr. Naifeh's opinion as a "medical source," she was required to either include in her RFC assessment all of the restrictions he identified or explain her reasons for rejecting them. Doc. 12 at 4-6 (citing 20 C.F.R. § 404.1527(c)(2); SSR 96-8p; SSR 96-5p). Plaintiff claims that the error was prejudicial because his work as a cook and the alternative jobs the ALJ listed all require movements that Dr. Naifeh determined Plaintiff cannot perform. Doc. 12 at 6-7.

Defendant responds that the ALJ properly based Plaintiff's RFC on a litany of factors, including the state agency medical consultants' opinions, Dr. Panjwani's examination, and Plaintiff's testimony and treatment records, in addition to Dr. Naifeh's FCE. Doc. 15 at 4-6. Further, Defendant observes that the ALJ was not required to incorporate all of Dr. Naifeh's limitations into Plaintiff's RFC determination, or explain her reasons for not doing so, because he is a chiropractor and thus not an "acceptable medical source" whose opinion is entitled to controlling weight. Doc. 15 at 5-6.

The Court agrees with Defendant's assessment. Medical sources in social security cases are divided into two categories — "acceptable medical sources" and "other sources." Only an acceptable medical source can give a medical opinion and be considered a treating source whose opinion may be entitled to controlling weight. 20 C.F.R. § 404.1513(a) (2016). A claimant's RFC must be assessed based on all of the relevant evidence in the case record, including any

"medical source statements" submitted by an "individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). If the RFC assessment conflicts with an opinion from a "medical source," the adjudicator must explain why the opinion was not adopted. *Id.* at *7.

At the time Plaintiff filed his application for benefits, acceptable medical sources included licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.[2] *Id.*; *see also* 20 C.F.R. § 404.1527(a) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s)."). A chiropractor is classified as an "other source," which an ALJ may use to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. 404.1513(d). Nevertheless, the opinion of an "other source" – even one who has treated the claimant on a regular basis – is not entitled to the same deference as an opinion provided by an "acceptable medical source." *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009).

Thus, Plaintiff's argument is based on a faulty premise — that the ALJ was obliged to either include all of the restrictions on Plaintiff's abilities that Dr. Naifeh identified or explain her reasons for rejecting them. As the above-authority establishes, this is simply not so. *See also Kenneth L.K. v. Saul*, No. 3:19-CV-2895-N-BT, 2020 WL 6821076, at *3 (N.D. Tex. Nov. 2, 2020), *adopted by* 2020 WL 6820844 (N.D. Tex. Nov. 20, 2020) (Godbey, J.) (collecting cases

---

[2] Section 404.1513 was revised, effective March 27, 2017.

holding that an ALJ is not required to rely on a chiropractor's evaluation in making an RFC assessment). Therefore, Defendant is entitled to summary judgment.

IV. **CONCLUSION**

For the foregoing reasons, it is recommended that Plaintiff's construed motion for summary judgment, Doc. 12, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 15, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on February 4, 2021.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).